IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

_____

| | | |
|---|---|---|
| LAVERNE J. VONDAL, | ) | Cause No. CV 11-42-GF-SEH-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| WARDEN MARTIN FRINK; | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF MONTANA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

On June 7, 2011, Petitioner LaVerne Vondal moved to proceed in forma pauperis with this action for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner proceeding pro se.

On June 17, 2011, Petitioner was ordered to show cause why his petition should not be dismissed with prejudice as time-barred and/or as procedurally barred. He responded on August 12, 2011.

**I. Background**

Following two searches conducted at a residence at 315 3rd Ave. South in Medicine Lake, Montana, Petitioner was charged with criminal possession of

precursors to dangerous drugs, criminal manufacture of dangerous drugs, operation of an unlawful clandestine laboratory, possession of dangerous drugs, and five counts of criminal endangerment. Br. in Supp. (doc. 3) at 9-10; Br. Ex. E1.[1] Attorney Mary Zemyan represented him. *Id.* at 11; Pet. (doc. 1) at 6-7 ¶ 17. On August 3, 2004, based in part on counsel's advice that he had no standing to challenge the searches, Petitioner pled guilty to operation of a clandestine lab and two counts of criminal endangerment. Pet. at 2 ¶ 3; Br. in Supp. at 13.

Before sentencing, Petitioner moved to withdraw his guilty pleas, based in part on counsel's recent discovery that the search might have begun before the warrant was obtained. At that point, the trial judge recalled receiving the warrant application by fax when he was at Wolf Point, signing the warrant, and driving home that evening through Medicine Lake to see if the search had begun. He said, "[t]hey were just there it looked like then, so, I mean, I had an hour and a half from when I gave it to them to when I think they actually got going." Br. Ex. I1. Petitioner's motion to withdraw his guilty pleas was denied. Br. in Supp. at 15.

On November 15, 2004, Petitioner was sentenced to serve a total of forty years in prison, with twenty-five suspended. Judgment was entered that day. Pet. at 2 ¶ 2;

---

[1] Exhibits are attached to the Brief in Support (doc. 3) and are referred to by letter and page number. "Br. Ex. E1," for instance, is the first page of the Brief's Exhibit E. Both appendices and exhibits are attached to the Response to the Order to Show Cause (doc. 11). Appendices are referred to, for example, as "Resp. App. E1," exhibits as "Resp. Ex. 4-1," meaning Exhibit 4 at page 1.

Resp. Ex. 1-1 to 1-6. Petitioner's sixty-day window to pursue a direct appeal of his conviction or sentence, Mont. R. App. P. 5(b) (2003), closed on January 14, 2005.

On February 7, 2005, Petitioner, acting pro se, submitted a "Notice of Intent to Appeal" to the trial court and sent a copy to counsel. Resp. Ex. 4-22. No action was taken on the Notice of Intent.

On September 3, 2006, Petitioner submitted a "motion to amend judgment," challenging the order of restitution, but the trial court denied the motion. Petitioner timely appealed. On February 13, 2008, the Montana Supreme Court rejected his arguments, recharacterizing his motion as in essence a petition for postconviction relief and holding that it was time-barred. Resp. Ex. 4-24 to 4-27; *see also* Mont. Code Ann. § 46-21-102(1)(a) (2007).

It appears that, in 2008, Petitioner presented one or more claims to an ethical commission. In June 2009, the trial court entered an order of recusal, and another judge assumed jurisdiction over Petitioner's case. Br. Exs. J1 (under seal), K1; Resp. App. L1 (under seal), M1.

On January 25, 2010, Petitioner filed a petition for postconviction relief in the trial court. Resp. Ex. 2-1 to 2-5. The State was ordered to respond, Resp. Ex. 3-1, which it did, Resp. Ex. 4-1 to 4-29. On April 12, 2010, the trial court held the petition procedurally barred, Br. Ex. Q1; Resp. Ex. 5-1; *see also* Mont. Code Ann. § 46-21-

105(1)(b) (2009), and time-barred, Br. Ex. Q2; Resp. Ex. 5-2 (citing Mont. Code Ann. § 46-21-102)). Petitioner objected that he did not have an opportunity to file a reply and attempted to rebut the State's arguments. Resp. Ex. 6-1 to 6-32. On April 22, 2010, the trial court overruled the objection, citing Uniform District Court Rule 2 and stating that the Rule "does not require that the Court wait for a reply brief to make a ruling." Resp. Ex. 7-1 to 7-2.

Again, Petitioner had sixty days to file a notice of appeal. Mont. Code Ann. § 46-21-203 (2009). Instead, on May 13, 2010, Petitioner filed a petition for writ of supervisory control in the Montana Supreme Court, Resp. App. A1-A5, asserting that the trial court violated Uniform Rule 2.

On or about June 18, 2010, Petitioner filed in the trial court a document titled "Motion for Request of Extension of Time to file Notice of Appeal." Resp. App. F1-F2. No action was taken on that document.

The Montana Supreme Court denied supervisory control. Resp. App. B1-B3 (citing Mont. Code Ann. § 46-21-201(1)(a)). Petitioner sought rehearing, Resp. App. C1-C3, arguing that if Uniform Rule 2 did not apply, then his postconviction petition was denied with no rationale at all – though Petitioner's exhibits clearly show the trial court's rationale, Br. Ex. Q; Resp. Ex. 5. The Montana Supreme Court denied rehearing on August 31, 2010. Resp. App. D1-D2.

On September 13, 2010, Petitioner attempted to file a notice of appeal in the Montana Supreme Court. Resp. App. G1. It was returned to him because it was late, and Petitioner was advised of what he must do to obtain leave to file an out-of-time appeal. Resp. App. H1; *see also* Resp. Apps. I, J. Petitioner did not file a petition for leave to file an out-of-time appeal.

On December 8, 2010, Petitioner filed a petition for writ of supervisory control in the United States Supreme Court. It was recharacterized as a petition for writ of certiorari and returned to him without filing on December 14, 2010, because it was untimely. Br. Ex. P1.

On June 6, 2011, Petitioner filed his petition for writ of habeas corpus in this Court. Pet. at 8, Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

## II. Petitioner's Allegations

Petitioner advances several reasons that both searches conducted prior to his arrest were unlawful, and he asserts that he had standing to contest them. Pet. at 3 ¶ 15A; Br. in Supp. at 17-20, 28. He objects to the trial court's actions following issuance of the search warrant and comments at the hearing on his motion to withdraw his guilty pleas. Pet. at 4 ¶ 15B; Br. in Supp. at 24-27. He alleges ineffective assistance of counsel based on "multiple actions taken or not taken by appointed counsel," Pet. at 4 ¶ 15B; Br. in Supp. at 29, specifying her failure to investigate his

Fourth Amendment claims and to identify grounds for a suppression motion, Br. in Supp. at 20-23; her failure to challenge the court's actions following issuance of the search warrant, *id.* at 25; her coercing him into pleading guilty by explaining the evidence that would be used against him, *id.* at 23-24; and her failure to file a notice of appeal, *id.* at 27-28. Finally, he alleges that "cumulative error" prejudiced his right to a fair trial. Br. in Supp. at 30.

### III. Analysis

Petitioner was advised that, on the face of his submissions to this Court, *e.g.*, Pet. at 2 ¶¶ 2, 8; *id.* at 3 ¶ 13, two procedural obstacles stand in his way: the federal statute of limitations and the doctrine of procedural default. *Herbst v. Cook*, 260 F.3d 1039, 1042-44 (9th Cir. 2001); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998). Each doctrine was briefly explained and applied to the procedural history of Petitioner's filings in state court. Petitioner was also advised of the possible exceptions to these doctrines. Order to Show Cause (doc. 6) at 6-10.

Petitioner's response, along with its attached appendices and exhibits, plainly establishes that his petition is both time-barred and procedurally barred.

**A. Procedural Default**

A federal habeas court generally will not hear a state prisoner's claims unless they have been fairly presented in the state courts first. "[S]tate prisoners must give

the state courts one full opportunity to resolve any [federal] issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Brown v. Allen*, 344 U.S. 443, 447 (1953).

### 1. Petitioner Did Not Fairly Present His Claims

The Montana Supreme Court has never even laid eyes on Petitioner's claims. He did not pursue a direct appeal from his conviction. He used the State's established appellate review process to ask the Montana Supreme Court to decide whether the trial court correctly denied his motion to amend the judgment. But he did not timely file the motion to amend in the trial court, and he challenged only restitution anyway. He raised none of his current claims in that motion or on appeal from its denial.

Petitioner also asked the Montana Supreme Court to exercise supervisory control over the trial court when it denied his postconviction petition under what he describes as either Uniform District Court Rule 2 or no authority at all. Had Petitioner asserted his postconviction claims in his petition for writ of supervisory control, the Montana Supreme Court might have deemed his petition a postconviction appeal and addressed his claims. But it could not do that. All Petitioner presented – once in his petition for supervisory control, Resp. App. A1-A5, and again in his petition for rehearing of his petition for supervisory control, Resp. App. C1-C2 – was his theory

of what Uniform District Court Rule 2 means. The Montana Supreme Court, accordingly, denied supervisory control, because Uniform District Court Rule 2 is mooted by Mont. Code Ann. § 46-21-201(1)(a) (2003).[2] Resp. App. B2 (quoting Mont. Code Ann. § 46-21-201(c)). Petitioner never asked the court to hear his actual postconviction claims, because he did not appeal the dismissal of his postconviction petition.

As a result of Petitioner's needless resort to extraordinary remedies like supervisory control instead of an ordinary, garden-variety appeal, he failed to present any of the claims in the federal petition to the Montana Supreme Court. None of Petitioner's claims can be presented now; they are time-barred. Mont. Code Ann. § 46-21-102(1), (2) (2011). Because there no longer exists a state procedural avenue for Petitioner to raise his claims in state court,[3] they are all procedurally defaulted. *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

---

[2] This statute was amended in 2005 and again in 2009, but not in any respect that is or ever has been important in this case.

[3] *State v. Lott*, 150 P.3d 337, 342 ¶ 22 (Mont. 2006), recognizes a habeas remedy under state law, despite the constraints of Mont. Code Ann. § 46-22-101 (2003), when a state prisoner can show that his sentence is "facially invalid." Facially means facially; that is, one must be able to see the invalidity just by reading the Judgment in light of the applicable law. In *Lott*, for instance, it was readily evident that the prisoner was sentenced in violation of the double jeopardy law of the State. 150 P.3d at 337-38 ¶ 1. There is no comparable claim here.

### 2. Excusing Procedural Default

Unless Petitioner can show a legitimate excuse for his default, his claims cannot be heard in federal court. To excuse his default, Petitioner must show either cause and prejudice or "actual innocence." *Smith*, 510 F.3d at 1139. "In order to establish cause . . . a petitioner must demonstrate that the default is due to an external objective factor that 'cannot fairly be attributed to him.'" *Id.* at 1146 (quoting *Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000)). The "prejudice" prong is met if Petitioner can show that the error he alleges was serious enough to undermine confidence in the outcome of the proceeding. *Id.* at 1148. "Actual innocence" is shown if, "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial," *Schlup v. Delo*, 513 U.S. 298, 328 (1995), "it is more likely than not that no reasonable juror would find [Petitioner] guilty beyond a reasonable doubt," *Smith*, 510 F.3d at 1140.

#### a. Cause

Petitioner's response to the Order to Show Cause fails to allege cause sufficient to excuse his failure to present any of his claims to the Montana Supreme Court.

Arguably, Petitioner can show cause for his failure to file a direct appeal from

his conviction. He asserts ineffective assistance of counsel.[4] Resp. at 5-6. But Petitioner's failure to file a direct appeal from his conviction did not cause him to fail to present *any* claims to the Montana Supreme Court. He filed a postconviction petition, asserting, among other things, counsel's ineffectiveness in failing to pursue a direct appeal. But he did not appeal from the trial court's denial of that petition. That was his opportunity to present his claims to the Montana Supreme Court, and he simply failed to do it.

Petitioner seeks to show cause for his failure to pursue a postconviction appeal by resorting to the allegedly confusing amendment of the Montana Rules of Appellate Procedure. Effective October 1, 2007, those Rules were revised in two respects important to this case. First, while notices of appeal were previously filed in the trial court, as of October 1, 2007, they must be filed in the Montana Supreme Court. *Compare* Mont. R. App. P. 4(a) (2003) *with* Mont. R. App. P. 4(2)(a). Second, while the trial courts previously had jurisdiction to extend the time for filing a notice of appeal, as of October 1, 2007, only the Montana Supreme Court, on petition, holds that authority. *Compare* Mont. R. App. P. 5(c) (2003), *with* Mont. R. App. P. 4(6) (2007). In his response to the Order to Show Cause, Petitioner says:

---

[4] While constitutionally ineffective assistance of counsel may serve as cause, that claim must itself be fairly presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). That is precisely what Petitioner failed to do when he failed to appeal the trial court's denial of his petition for postconviction relief.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 10

> In accordance with Rule 5(c) of the old M.R.App.P. it states, "The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed no later than 30 days after expiration of time prescribed by Rule 5(a) for civil cases." (see App. "E" Old Rules of Montana Rules of Appellate Procedure). Petitioner, at the time, had the understanding that since the Montana Supreme Court had sent back his notice of intent to appeal and informed petitioner that any motions pertaining to appeals would need to be submitted/filed with the district court. Noting Expost Facto.

Resp. to Order to Show Cause (doc. 11) at 2 (sic).

Petitioner does not elsewhere claim, and he adduces no evidence to show, that anyone at the Montana Supreme Court "informed petitioner that any motions pertaining to appeals would need to be submitted/filed with the district court." In fact, he obviously knew he must file his notice of appeal in the Montana Supreme Court. Resp. App. I1 (insisting, in letter to "Clerk of the Montana Supreme Court," that "the 'notice of appeal' is 'timely' filed. Please so file and provide the case number"). And he also knew what he must do as a result of the fact that his notice was untimely. An appellate case manager at the Montana Supreme Court clearly and concisely explained to him that, "[p]ursuant to Rule 4(6) of the Montana Rules of Appellate Procedure *which are enclosed*, you can file a **separate verified petition for an out-of-time appeal**, supported by affidavits records or other evidence establishing existence of extraordinary circumstances to try to justify a late appeal." Resp. App. H1 (second

emphasis in original).[5]  This advice left no room for doubt or question.  Petitioner, nonetheless, doubted and questioned.  Resp. App. I1.  The case manager responded:

> As the previous letter of 15 September 2010 explained to you, the only way your appeal of an order dated in April of 2010 can proceed is for you to file a petition for an out-of-time appeal.  Your motion for extension of time to file appeal is not within the jurisdiction of the district court, but needs to be filed in this court and you must prove there are "extraordinary circumstances" to justify the late appeal.

Resp. App. J1.  Petitioner did not seek leave to prosecute an out-of-time appeal.

By invoking the "old" Montana Rules of Appellate Procedure, Resp. at 2, Petitioner asks this Court to ratify his unilateral and frankly inexplicable decision to ignore this clear, helpful, and correct advice.  His recalcitrance is not an external objective factor that cannot fairly be attributed to him.  It is an internal, subjective factor, wholly within Petitioner's control and attributable only to him.  Therefore, it is not cause to excuse his failure to present any of his claims to the Montana Supreme Court.

To the extent Petitioner claims that application of the "new" Montana Rules of

---

[5] Mont. R. App. P. 4(6) (eff. Oct. 1, 2007) provides:
In the infrequent harsh case and under extraordinary circumstances amounting to a gross miscarriage of justice, the supreme court may grant an out-of-time appeal.  An out-of-time appeal must be requested by verified petition supported by affidavits, records, and other evidence establishing the existence of the extraordinary circumstances claimed.  Extraordinary circumstances do not include mere mistake, inadvertence, or excusable neglect.
The Rule was amended effective Oct. 1, 2009, but the amendment affected subsection (2), not subsection (6).

Appellate Procedure in his case violates the federal constitutional prohibition against ex post facto legislation, he is wrong. The first element that "must be present for a . . . law to be ex post facto" is that "it must be retrospective, that is, it must apply to events occurring before its enactment." *Weaver v. Graham*, 450 U.S. 24, 29 (1981). The "new" Montana Rules of Appellate Procedure, which went into effect on October 1, 2007, applied to an event occurring two and a half years later, in 2010 – the trial court's denial of Petitioner's postconviction petition. There is no ex post facto issue.

Because Petitioner fails to show cause, there is no need to consider whether he can show prejudice.

### b. Actual Innocence

Petitioner was advised that his procedural default could be excused if "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial," *Schlup v. Delo*, 513 U.S. 298, 328 (1995), "it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt," *Smith v. Baldwin*, 510 F.3d 1127, 1140 (9th Cir. 2007) (en banc).

As previously noted, Order to Show Cause at 8, Petitioner asserts his standing to challenge the search of his friends' home and challenges the officers' authority to

seize the garbage in the curtilage and their timing of the execution of the warrant – but not the reliability of the results of the searches. He was advised that, unless he presented "extremely compelling evidence that he did not commit the crimes to which he pled guilty, actual innocence will not be further considered." *Id.* He does not attempt to show actual innocence. Therefore, it will not be further considered.

### B. Federal Statute of Limitations

Petitioner filed his federal petition 1,747 days too late. *See* Order to Show Cause at 6-8. Although he argues that time did not begin to run until he discovered the alleged legal defects in his conviction, Resp. at 3-4, that is neither what "newly discovered evidence" means, Mont. Code Ann. § 46-21-102(2), nor what an "impediment to filing an application created by State action in violation of the Constitution" means, 28 U.S.C. § 2244(d)(1)(B). State-created obstacles to discovering the factual or legal basis for a claim might support a later start date, *e.g.*, *Whalem/Hunt v. Early*, 233 F.3d 1146, 1147-48 (9th Cir. 2000) (en banc) (per curiam), but mere ignorance of the law is not a state-created obstacle, and Petitioner identifies no handicap imposed by State action. The limitations period commenced when Petitioner's conviction became final or, even if its start was delayed by some confusion over whether he was pursuing a direct appeal of his conviction – and Petitioner does not say that – it had certainly commenced by January 25, 2010, when

Petitioner filed his postconviction petition in the trial court. Even if Petitioner had one year from that very late date to file in federal court, he filed 131 days too late. *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005); Br. Ex. Q2; Resp. Ex. 5-2.

Second, though Petitioner argues that the same facts support equitable tolling, they do not. Even under the extremely generous assumption that the federal limitations period did not begin until January 25, 2010, there was no reason for Petitioner to file 131 days too late. He might have had grounds for statutory or equitable tolling if he had simply done what the Montana Supreme Court's appellate case manager told him to do, but he did not. Tolling would not be equitable under the circumstances here.

Petitioner's claim of "fraud," Resp. at 4, is specious. Constitutionally ineffective assistance is not fraud.

**C. Conclusion**

Each claim in the federal petition is both procedurally barred and time-barred. Petitioner fails to show either cause or actual innocence to excuse his procedural default, and he fails to show any reason why the time bar should not apply. His petition should be dismissed with prejudice.

**IV. Certificate of Appealability**

A certificate of appealability may issue as to those claims on which the

petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, as here, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Lambright v. Stewart*, 220 F.3d 1022, 1026 (9th Cir. 2000) (quoting *Slack*, 529 U.S. at 484).

Petitioner's Fourth Amendment claims, as accompanied by his allegations of ineffective assistance of counsel, *see Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986), may have merit. *See California v. Greenwood*, 486 U.S. 35, 41 (1988) (holding that there is no reasonable expectation of privacy in garbage if it is "left for collection" and placed "in an area accessible to the public"); Br. Ex. C1; *Minnesota v. Carter*, 525 U.S. 83, 91 (1998) (discussing *Minnesota v. Olson*, 495 U.S. 91, 98-100 (1990)) (explaining that overnight guests "typify those who may claim the protection of the Fourth Amendment in the home of another"); Br. Exs. D3 ¶ 5, F2; Br. in Supp. at 9-10. The trial judge's reliance on his personal recollections of what he thought he saw at the search of the house in Medicine Lake, Br. Ex. I1, is also problematic

enough to meet the low standard of a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2); *In re Murchison*, 349 U.S. 133, 138 (1955), though it likely did not rise to the level of violating the Constitution.

But Petitioner decided to chart his own course through the state courts in his attempts to raise these claims, and as a result, the Montana Supreme Court has never even laid eyes on any of them. Petitioner does not assert actual innocence. And even if there was some good reason Petitioner did not learn until very late in the day how to present his claims to the Montana Supreme Court – a dubious proposition, since he pursued a direct appeal of the trial court's denial of his motion to amend the judgment – that potentially legitimate "cause" was mooted when he simply ignored two clear, concise, and correct explanations of exactly what he needed to do to place his claims before the Montana Supreme Court. Petitioner presents no objective external factor that cannot fairly be attributed to him to excuse his procedural default. He presents only subjective, internal factors – barriers of his own making.

As for the time bar, even under the most generous construction of the commencement date of the federal limitations period, Petitioner filed 131 days too late. In view of both *Pace*, 544 U.S. at 410, and Petitioner's decision to ignore the advice of the Montana Supreme Court's appellate case manager, there is no basis for statutory or equitable tolling. Under the circumstances here, tolling would be

distinctly inequitable.

A certificate of appealability is not warranted because a reasonable jurist could not find a way to get to the merits of Petitioner's claims.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (doc. 1) should be DISMISSED WITH PREJUDICE as time-barred and as procedurally defaulted without excuse.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Petitioner files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in

objection to this Findings and Recommendation may preclude Petitioner from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Petitioner must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 29th day of August, 2011.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge